## ECKFORD v. WOOD, ET AL.

1. The master of a vessel has the right to retain the possession of goods liable to the payment of a general average, until it is paid, and if he parts with goods which he is thus authorised to retain, and afterwards pays their portion of the contribution, an implied assumpsit is raised that he shall be repaid by the owner.

2. A stipulation entered into by the consignees, in their own names, to pay the average on goods, is a personal obligation, which does not bind the owner; nor does it, without satisfaction, discharge him from liability for contribution.

3. The master of a vessel is authorised to contest a claim for salvage, and to liberate the vessel and cargo on stipulation as the agent of the owners of the cargo or of the vessel; the latter having the right to retain the cargo until the payment of freight. Sureties, in such a stipulation, are, in effect, sureties for the owners of the goods and vessel, they being primarily bound for the payment of the decree; and payment by the sureties is so much money paid for each contributor, as his proportion comes to.

4. After the payment of salvage by a surety in a stipulation bond, if the owner of goods claims and receives of the insurers the loss as ascertained by the decree, or directs payment to be made of the claim—either of these circumstances authorize the presumption of a satisfaction of all that has been done to effect the adjustment of salvage.

5. A charge that the owner of goods is bound in consequence of a stipulation entered into by consignees, in their own names, is erroneous, although the owner is bound by receiving the goods, inasmuch as the verdict may have turned on the charge.

6. When plaintiffs introduce a record showing payment under a decree made at a certain time, it is not competent for them to dispute the conclusiveness of the record as to the time.

WRIT of Error to the County Court of Mobile county.

This action of assumpsit was commenced by attachment, on the 18th of January, 1841, and the plaintiffs declare for money paid, &c: verdict and judgment for the plaintiffs.

At the trial a bill of exceptions was taken by the defendant, which discloses this state of facts.

The defendant was the owner of certain goods, valued at $6400, and shipped at Philadelphia, on board the schooner Thomas Ewing, bound for Mobile. On her voyage the vessel run aground at Mobile Point, but was gotten off and arrived at Mo-

Eckford v. Wood, et al.

bile.  The vessel was consigned to the plaintiffs, and the goods of the defendant to McMorris & Knox.

On its arrival the schooner and cargo were libelled for salvage, and seized by the marshal of the United States; but released, upon the master's entering into a stipulation to perform the decree which might be rendered.  The plaintiffs, and one Latham Hull were the master's sureties in this stipulation.

The master required of the several consignees of the goods, before delivery, to sign a stipulation.  This recited the accident, and admitted that thereby the schooner had been obliged to employ lighters, and to throw overboard a part of the cargo, whereby a general average had accrued.  The subscribers to it then agreed to pay their respective proportions of the average as soon as adjusted.  This stipulation was signed by many persons, and opposite their names is a sum stated, most probably intended to indicate the value of the goods consigned.  Among the names subscribed is the firm of McMorris & Knox, for Wm. Eckford, and opposite their names is the figures $7,600.  It was shown that the addition " for Wm. Eckford," was added after the stipulation had been signed a considerable time, and by McMorris & Knox, when they had ceased to be the agents of the defendant.  It was also shown that of this 7600 dollars 1200 was for goods belonging to one Fernandez, also consigned to McMorris & Knox, but in which the defendant had no interest.

The plaintiffs refused to deliver the goods to the consignees until they should execute a bond, with condition to pay such proportion of salvage, costs and expenses as should accrue on said goods; and thereupon McMorris & Knox gave bond with securities provided by them, payable to Irelan the master of the vessel.  This bond was accepted by the plaintiffs, and the goods thereupon delivered to McMorris & Knox, who forwarded those belonging to the defendant to him, and sold those belonging to Fernandez.

The plaintiffs also gave in evidence the statement or account of the average, made by a notary, stating the value of the vessel and cargo at 50,391 72-100 dollars, and the entire amount of salvage, costs and expenses at 11,351 08-100 dollars; and showing McMorris & Knox liable to pay on $7,600 as consigned to them, 1,711 99-100 dollars.

The plaintiffs also introduced a transcript of the decree of the

District Court ofthe United States, on the libel for salvage, showing
that 20 per cent. on the value of the vessel and cargo, was allow-
ed to the salvors.    This decree is stated in the transcript, as be-
ing rendered on the 22d June, 1841, and a supplemental decree
was had on the stipulation against Irelan the master and his sure-
ties for 9,830 97-100 dollars, the sum decreed for salvage.    This
is stated in the transcript to have been rendered on the 22d June,
1841.    This sum was paid by the plaintiffs to the marshal.

It was also shown that Eckford had received from his insur-
ers compensation for the loss sustained, as well as his goods ship-
ed to him by McMorris & Knox.

The defendant offered evidence to show that McMorris & 
Knox were indebted to him at the trial, in the sum of 3,000 dollars,
but that the accounts between them when the stipulation was en-
tered into, showed a nominal indebtedness of the defendant, caus-
ed by engagements for him by McMorris & Knox, which never
were paid.    Eckford had directed McMorris & Knox to pay the
amount which the plaintiffs claimed, but they refused, on the
ground that they were not in funds.    It was also shown that
McMorris & Knox had since become insolvent.

On this evidence, the defendant requested the Court to instruct
the jury,

1st.   That the transactions as proved, do not support this action.

2d.   That if the goods were delivered to McMorris & Knox,
on their giving their own bond with surety, the recovery must be
on that bond, and cannot be against the owner.

3.   That unless Wood or Irelan can show they had a right to
replevy the goods, the plaintiffs cannot maintain this action.

4.   That if the jury should believe the condition of the delivery
of the goods was a bond payable to Irelan, then the plaintiffs can
not recover.

5.   That the plaintiffs cannot recover, unless they show that
they gave notice to the defendant before suit, that they had paid
money for his account.

6.   That there can be no liability against the defendant on the
first or average bond, under the proof.

7.   That the record produced is conclusive proof of the time
when the decree was rendered, and that the plaintiffs could not
deny it, they having introduced the same in evidence.

8.   That from the evidence shown, the plaintiffs had no right

Eckford v. Wood, et al.

to replevy the goods, and to charge the defendant thereby, unless requested so to do by him.

All which the Court refused to charge, and instructed the jury that if McMorris & Knox were the agents of the defendant, and the average bond was given at their request as such, the defendant would be thereby bound ; that if they, as the agents of the defendant received the goods, and forwarded them, the defendant is bound ; that if the plaintiffs, by reason of the delivery to McMorris & Knox, became liable, and paid the 20 per cent. salvage, the defendant is bound to refund ; and that if the suit was instituted before the decree was rendered, then it cannot be sustained.

The defendant excepted to the refusal to give the charge requested, and to those given, and now opens the examination of the entire bill of exceptions, by his assignments of error.

STEWART, for the plaintiff in error.

DARGAN, contra.

GOLDTHWAITE, J.—Although this case is somewhat embarrassed by the quantity of evidence, and entangled by the number of charges requested, yet the rules which must govern it are few and exceedingly plain.

The claim of the plaintiffs to be reimbursed for the money paid for the defendant, arises from two distinct grounds; first, from the payment on account of the general ·average for the goods thrown overboard, and secondly for that made under the decree for salvage.

1. As to the general average, the rule of the civil law is that the master may sue and be sued for the adjustment of it, but by the common law, each shipper who receives his goods, is liable to an action at the suit of every one entitled to receive from him. [Abbott on Ship. 361.] The master also has the right to retain the goods until the adjustment is made, and the average paid; but it is said, a court of equity will not compel him to assert this right for the benefit of those entitled to contribution, [ib. 362.] If the master has the right to retain the goods until the average is adjusted and paid, as admitted by all the authorities, it follows that a payment to him must discharge the contributor from all the contributees, although the money may never reach their hands;

and this consequence goes far to establish the reasonableness of the rule of the civil law; but conceding the master cannot sue or be sued according to the common law, we cannot doubt that if the master, or the consignee, who is his agent, voluntarily parts with goods which he is authorised to retain, and afterwards pays the contribution for which he could have retained them, an implied *assumpsit* is raised, that he shall be repaid by the owner. In Simmons v. White, [2 B. & C. 805,] it is said " that the shipper of goods, tacitly, if not expressly, assents to general average as a known maratime usage; and by assenting to it, he must be understood to assent also to its adjustment, according to the usage and law of the place where the adjustment is to be made."

2. In this case, the stipulation of McMorris & Knox, certainly did not bind the defendant, because it did not purport to do so, nor was it executed by them as his agents. So neither can it have the effect to discharge him from liability, as there has been no satisfaction under it. The defendant is bound, by the payment made for his benefit, and a sufficient authority to make it, may be presumed from the reception of the goods without paying the contribution for which they were liable.

3. With respect to the claim growing out of the payment of the decree for salvage, it rests on principles slightly different.

There is no question, we think, that the master was authorised to contest the claim of the salvors, and to liberate the vessel and cargo, on the customary stipulation; and this, either as the agent of the owners of the cargo, or as the agent of the ship owners who were entitled to retain the cargo until the payment of freight. When then the plaintiffs became the master's sureties on the admiralty stipulation, they were, in effect, the sureties for the owners of the goods and vessel, released by this act of the master. As the goods were primarily liable for the payment of the decree, the payment made by the plaintiffs was so much money paid for each contributor as his proportion comes to.

4. Independent of these considerations, the evidence discloses two other grounds, either of which, in law, amounted to a satisfaction of all which the plaintiffs had done. It seems this defendant directed his agents to pay the claim, and also that compensation had been made to him by his insurers. Either of these circumstances would authorise the presumption of a satisfaction of the payment made by the plaintiffs.

The application of these principles will show a liability in the defendant, but there are errors in the charges given and refused, for which the judgment must be reversed.

4. The court charged, that if McMorris & Knox, were the agents of the defendant, and if they, as such, requested that the stipulation for the average should be taken, he would thereby be bound. This is erroneous, because, as agents they did not attempt to bind him, but only bound themselves personally. It is true, he was bound without such a stipulation, but for what we can know, the verdict may have been based on this charge. The sixth charge, which requested instructions that the defendant was not bound by this stipulation, ought to have been given, although there was enough independent of it.

6. It is probable, after all, that this action was premature, inasmuch as the record shows it was commenced in January, 1841, while the transcript offered in evidence states the decree in the admiralty proceedings, as having been had in June afterwards. The seventh charge requsted evidently relates to this condition of the proof, and certainly it was not competent for the plaintiffs to dispute the conclusiveness of their own evidence as to the time. The charge ought to have been given, and if the record is correct, it would probably have produced a different result.

Let the judgment be reversed and remanded.